ANNA LIPPS, APPELLANT, V. MARIA PANKO ET AL., APPELLEES.

FILED MARCH 28, 1913.     No. 17,115.

1. **Judgment: JURISDICTION.** One not served with process in an action, who does not in person or by an authorized attorney appear in such action, is not bound by a judgment rendered therein.

2. **Appearance by Attorney: AUTHORITY: QUESTION FOR JURY.** Where, in an action pending in court, one not made a party when the action is begun, nor served with process, is subsequently made a party by the written appearance of an attorney, who signs such appearance for and in the name of said person, and the authority of the attorney to make such appearance is denied, and, upon a

trial of that issue in another action, the evidence is conflicting, the question of the authority of the attorney to enter such appearance is one of fact for the jury.

3. Contracts: EXECUTION: QUESTION FOR JURY. In an action upon a contract partly written and partly in parol, where the making of the contract, by one of the parties who did not sign the same, is denied, and the issue thus presented rests upon conflicting evidence, the question is one of fact for the jury.

4. Wills: RELINQUISHMENT: LIABILITY OF SURETY. Where a daughter of a deceased father, who has filed a contest of the will of such decedent which gives the entire estate of $30,000 to decedent's widow, is induced by the husbands of two of her sisters to withdraw such contest and to execute a written relinquishment of all interest in her father's estate and all interest in the estate of her mother, the beneficiary under the will, at her death, for the stipulated sum of $4,000, under a written agreement that they will be surety for the payment of such sum, the fact that the mother, after such withdrawal, fails and refuses to pay the sum stipulated will not, of itself, relieve such sureties from liability upon their contract.

APPEAL from the district court for Johnson county: JAMES R. HANNA, JUDGE. *Reversed.*

*Samuel P. Davidson,* for appellant.

*George A. Adams, E. Ross Hitchcock, D. W. Livingston* and *Hugh La Master, contra.*

FAWCETT, J.

This action was instituted in the district court for Johnson county to recover a sum alleged to be due on an express contract. The court directed a verdict in favor of defendants, and from a judgment thereon plaintiff appeals.

The issues presented by the pleadings, so far as it is necessary to consider them here, are substantially as follows: Matteus Panko died in Otoe county, leaving his widow, defendant Maria Panko, his sons, the defendants Matteus, Godfrey and Terman, and his daughters, the plaintiff and Minnie and Pauline Harms, wives respec-

tively of the defendants Harm and Henry Harms. After Mr. Panko's death, defendant Maria filed what she claimed was the will of the decedent, together with a petition for the probate of the same. This will devised all of the estate of the decedent absolutely to defendant Maria. Plaintiff filed objections to the probate of the will upon the grounds that at the date it was alleged to have been executed decedent was not mentally competent to execute a will, and was coerced into signing the same by the mother and three sons above named. Subsequent to filing such contest, the defendants, the mother, the three sons, and the two sons-in-law, acting for their wives, attempted to arrange a settlement of the estate. Plaintiff did not participate in these negotiations. It was considered by defendants that, if they could secure a settlement with plaintiff, the rest of them would have no difficulty in getting together. It was thereupon agreed that the defendants Harms should conduct the negotiations with plaintiff. In accordance with that arrangement, they called upon plaintiff, and, after first suggesting $3,000, which sum was rejected by plaintiff, the sum of $4,000 was finally agreed upon; plaintiff agreeing to accept that sum in full of her share of her father's estate, and also agreeing not to ask for any share of the estate of her mother, Maria Panko, at her death. Thereupon the defendants Harms presented to her, and she and her husband signed, the following instrument: "Sterling, Nebraska, March 12, 1906. I, Mrs. Anna Lipps, a daughter of Matteus Panko, deceased, and Mary Panko, wife of, and beneficiary under the will of, Matteus Panko, do hereby, agree that for and in consideration of the payment of $4,000 or get the equivalent in notes owned by the said estate of Matteus Panko, deceased, I will accept the same in full of my share of said estate, and for the said consideration I further agree that I will not ask for any share or interest that I may have under the law in the property or estate of my mother, Mary Panko. Anna Lipps, Charles Lipps. In presence of Jno. Boatsman.

Subscribed and sworn to before me this 12th day of March, 1906. Jno. Boatsman, Notary Public. (Seal.)"

Before plaintiff would sign the above instrument, she demanded security that the $4,000 would be paid to her as agreed. Thereupon, in order to induce her to enter into the agreement, the defendants Harms, in whom plaintiff seems to have had great confidence, agreed to secure the payment of the money stipulated, in writing, as follows: "We, the undersigned jointly and severally agree that we will be surety for the payment of the above consideration upon the completion of the probation of the estate of Matteus Panko, deceased. Henry Harms. Harm Harms."

In compliance with the agreement, and in consideration thereof, plaintiff withdrew her objections to the probate of the will, and the same was admitted to probate as the last will of her father, and defendant Maria became the owner of all the estate, which the stipulation shows amounted to about $30,000. Plaintiff prays judgment for the $4,000, with interest from the date of the contract. The defendant Maria Panko denies that plaintiff had any grounds for objecting to the probate of the will; that any agreement was made between plaintiff and any of the defendants to which she was a party, or that she procured the written waiver set out in the contract; and alleges that plaintiff withdrew her objections to the allowance of the will on her own motion, and without any inducement on the part of the answering defendants. The main defense relied upon by all of the defendants, however, is a prior adjudication between the parties. Upon this point the answers of the defendants Panko allege that about October 6, 1906, the defendant Maria filed her petition asking that the estate be finally closed and the terms of the will carried out. When this petition was filed, Pauline Harms, wife of defendant Henry Harms, and others of the heirs of decedent filed their objections to the allowance of the petition for discharge, and filed a petition in the county court, setting out a contract of settlement with

their mother, which they claimed included the contract
set out in plaintiff's petition, and under which settlement
it was agreed between them and their mother that the
latter should take as her share of the estate $7,000, and,
after payment to plaintiff of the $4,000 stipulated in the
contract, the rest of the estate was to be divided among
the children. The county court found in favor of the
petitioners and against their mother. She thereupon ap-
pealed to the district court, in which court judgment was
rendered in favor of the mother, and upon appeal to this
court the judgment was affirmed. The defendants allege
that, after the case was taken to the district court, plain-
tiff entered her appearance in that proceeding and joined
with the other children in their demand for an enforce-
ment of the contract which they were litigating, and that
by reason of such appearance she is bound by the judg-
ment entered by the district court and affirmed by this
court, and that her right to recover in this action is there-
fore barred. In her reply plaintiff specifically denies that
she entered her appearance in that proceeding, or ever
authorized any attorney or attorneys to enter her appear-
ance therein; denies that she participated or authorized
any one to act for her in prosecuting an appeal of that
case to this court. The defendants Harms also plead that
they signed the agreement set out in plaintiff's petition
simply as surety for Maria Panko, and were only to be
held liable thereon in case the contract was carried out
and Maria Panko was unable to pay the amount named
therein. This allegation is denied by plaintiff.

Upon the issues thus joined, a trial was entered upon
to the district court and a jury. At the conclusion of the
trial the court directed a verdict in favor of defendants,
and each of them, upon the following grounds, as shown
in the record: "Gentlemen of the jury: * * * I have
heard the arguments on the part of counsel, and have con-
cluded to make a disposition of this case myself without
your assistance. * * * I reached the conclusion that
the court in Otoe county and the supreme court have tried

and determined all the issues which have been tried before, and that there are no facts in the case which have not heretofore been determined in the other courts. That being true, there are no facts at this time to be submitted to you. That the courts in Otoe county have jurisdiction of the matter to try and determine any such matter they saw fit on facts and matters in controversy in the case. It is not for me to determine whether these courts acted wisely or not. Suffice it to say the supreme court has acted upon and adjudicated this case. You are therefore instructed, gentlemen of the jury, to return a verdict into this court finding in favor of the defendants, and each of them, and as against the plaintiff."

Plaintiff urges three principal grounds for reversal: (1) That the question as to whether plaintiff was a party to the proceedings in the district court for Otoe county and in this court should have been submitted to the jury. (2) That the question as to whether or not the contract set out in her petition was a binding contract between plaintiff and all of the defendants was conclusively established. (3) That, even if it should be held that plaintiff cannot recover as against the defendants Panko, she is still entitled to a judgment against the defendants Harms upon the indorsement on the contract signed by them. We will consider these assignments in the order named.

1. Should the question as to whether plaintiff was a party to the proceedings in the district court for Otoe county have been submitted to the jury; or, to state it another way, did the evidence so clearly and conclusively show that she was a party to that suit that the court could determine the question as a matter of law? It is undisputed that, when the petition was filed in the county court in that proceeding by Pauline Harms and others, it expressly alleged that Anna Lipps (plaintiff here) refused to join in their petition, and it is not claimed that she ever participated in that matter in the county court. When the case was appealed to the district court, Mrs. Harms and her associates filed their petition in that court,

in which they again alleged that Mrs. Lipps refused to join in their petition. After the appeal had been lodged in the district court, that court, on April 5, 1907, entered an order requiring all persons interested as heirs of Matteus Panko, deceased, to appear in said proceeding within ten days, and providing that, if they did not so appear, then an order should issue "bringing said persons into court on peril of forfeiting all interest in said estate." On April 23, 1907, Messrs. Hitchcock and Adams, who were appearing in said proceeding as attorneys for Mrs. Harms and her associates, and who are appearing here as attorneys for the defendants Harm and Henry Harms, filed an alleged written appearance of Mrs. Lipps, which recited that she was one of the parties who filed objections to the probate of the will of the decedent; that she now comes into court pursuant to the order of the court theretofore made, and joins in the application of Mrs. Harms and her associates, and adopts their application as her own, and prays that she may be joined as one of the applicants therein, and that the assets of said estate be divided and apportioned as therein prayed for. This appearance is signed "Anna Lipps, by E. Ross Hitchcock and George A. Adams, her Attorneys." Plaintiff and her husband both testify that they never authorized the attorneys, who signed that appearance, to sign the same, or to in any manner appear for her in that proceeding; that, when solicited by the attorneys to appear, she refused to do so; that, when told by the attorneys that the court had ordered her to be brought in, she insisted that she was not interested in that transaction; that she had no interest in her father's estate, but was relying upon her contract for $4,000. This is not a literal statement of her testimony, but it is a substantial statement of it. The testimony in opposition to plaintiff and her husband was mainly that of the two lawyers who made the appearance. Their testimony substantially is that, when Mrs. Lipps was asked to enter her appearance and join the proceeding, she objected on the ground that she did not want to

incur any more expense; did not want to pay attorney's fees; that one of the defendants Harms then stated that would be all right, that they would pay the attorney's fees; that thereupon she gave her consent for the attorneys to enter her appearance. This testimony is denied by plaintiff and her husband. There is no evidence that plaintiff or her husband ever signed or verified a pleading or paper of any kind in either the district court or this court. Upon this point it is somewhat significant that, when the case was appealed to this court, the appeal bond was signed by both of the defendants Harms and their wives, but was not signed by either plaintiff or her husband. If the case stood upon the above evidence alone, it was clearly error for the court to determine, as a matter of law, that the attorneys were authorized to enter plaintiff's appearance in that proceeding. No summons was served upon her, and if she never authorized any attorney to enter her appearance, nor participated in the prosecution of that case in the district court or in this court, then she is not bound by the judgment entered therein, and such judgment is not a bar to her prosecution of this action. This was a material issue of fact, which, resting, as it did, upon conflicting evidence, plaintiff was entitled to have submitted to the jury. But we think there was another strong reason why the court should not have directed the verdict upon that point. If the contract set out in plaintiff's petition was entered into between her and the defendants, and she had fully performed her part of that contract by withdrawing her contest of the will, and had thereby permitted the will to be admitted to probate without contest, and the estate of decedent to pass under the will to defendant Maria Panko, then plaintiff had no interest in the estate of the decedent, and the order of the court requiring all persons interested as heirs of Matteus Panko, deceased, to appear did not apply to her; and the lawyers were in error when they told her that it did so apply. Under that contract, if established, the defendants Panko and the defendants Harms were all antagonistic

parties to her.   Under that contract defendant Maria Panko would be liable to her for the payment of the $4,000 expressed therein, and, in the event of her failure to pay the same, defendants Harms would be liable under their written agreement to be surety for the payment of the same.   The lawyers who entered plaintiff's appearance in that suit were then and are now representing the antagonistic interests of the defendants Harms.   Occupying that relation, they could not, disinterestedly, also act for plaintiff.   As attorneys for defendants Harms, they were bound to know and to then understand that, if Mrs. Lipps entered her appearance and joined their clients in submitting the questions involved to the court in that proceeding, she would, to say the least, be jeopardizing her rights under the contract which they knew she held.   We do not wish to be understood as holding that the attorneys acted in bad faith.   What we do say is that those questions were proper for the consideration of the jury, and it was for the jury to determine whether or not plaintiff had joined in that proceeding and thereby submitted herself to the jurisdiction of the district court.

2. It is equally clear that the question as to whether or not the contract set out in plaintiff's petition was a binding contract should, at least, have been submitted to the jury.   Indeed, there is much force in the contention of her counsel that her contract was conclusively established by the evidence.   The testimony of plaintiff and her husband is that the contract was presented to them by the defendants Harms; that it was stated to her that an attempt was being made to settle the estate of her father; that $3,000 was first suggested, which sum Mrs. Lipps refused to consider.   Thereupon, $4,000 was named.   This amount she agreed to accept, provided they, the defendants Harms, would say it was all right.   It is apparent that she did not have confidence in her mother and brothers, but did have confidence in the defendants Harms; that, as an inducement to her to sign the contract, they made and signed the indorsement upon the back of it.

The next morning after the contract was signed, the defendants Harms, all of the defendants Panko, and the Reverend Mr. Beckman, pastor of the church to which they all belonged, met at the home of defendant Maria Panko. Some attempt is made by Matteus Panko to show that he was not present during the interview which then took place, but there is ample testimony in the record to warrant a holding that he was present. One thing is not disputed: At that interview some question was raised as to whether the contract should not have been acknowledged or sworn to before a notary. At the conclusion of the interview Matteus took the contract to Mr. John Boatsman, a notary public, for the purpose of having it put in proper form by him. Mr. Boatsman called up Mrs. Lipps and her husband by telephone, told them that he had the contract there, and either took their acknowledgment or administered the oath to them by telephone. At any rate, at the conclusion of his interview with them over the telephone, he attached his jurat to the contract. We are unable to see how Matteus can escape responsibility, whatever it may be, for anything that occurred at that interview.

Coming now to the interview itself, it clearly appears from the testimony that the Reverend Beckman read the contract over to the defendants in English, and again in German. It was read in German for the benefit of defendant Maria Panko, who understood German much better than she did English. Reverend Beckman testifies, and in this he is corroborated by defendants Harms, that he explained the contract in both English and German, and then asked them all if they understood it and would agree to abide by it; that they all, including defendant Maria Panko, answered in the affirmative. Defendant Henry Harms testified that, after the paper had been explained to them all, he suggested to Mr. Beckman that a contract in writing should be drawn up and signed by all of the parties, but that Mr. Beckman said: "He knew the family as well as I did or better, and we'd all better stick to

the contract. That suggestion was made right in Mrs.
Panko's house. Mr. Beckman got up and said, 'All should
understand this agreement, and is willing to, all should
understand this, all who do will come and shake hands
with me for the binding of this agreement,' and she (re-
ferring to Maria Panko) was the first that went, and
every one of us stood up. We were satisfied with it."
After the contract was signed, plaintiff went to her mother
to obtain the $4,000. Her mother told her "she would pay
it just as soon as the will was probated. She said she
would pay the $4,000." It is conceded that the contest
was withdrawn by plaintiff. After it was withdrawn, de-
fendant Maria told plaintiff's husband that she would
willingly pay the $4,000, "but now Matteus Panko ob-
jected." Further discussion is unnecessary to show that
the question as to whether or not the contract was duly
entered into by all of the parties should, to say the least,
have been submitted to the jury.

3. Are the defendants Harms liable under their writ-
ten indorsement upon the contract in suit, regardless of
the question as to whether or not sufficient was done by
the defendants Panko to bind them? Again we say this
question should, at least, have been submitted to the jury.
The evidence shows that they were the parties who in-
duced Mrs. Lipps to sign the contract set out in her peti-
tion, under which she agreed to accept $4,000, not only as
in full of her share of the estate of her father, but also in
full of any claim she might have as an heir of her mother
upon her death. They were interested in having her make
the contract. Their wives would be beneficiaries under it,
and through their wives they would indirectly be benefi-
ciaries also. They knew when they induced her to sign the
contract that it would bind her to withdraw her objections
to the probate of the will. They were conducting nego-
tiations with Maria Panko and the brothers of their wives.
They expected that, if Mrs. Lipps withdrew her contest
and permitted the will to be probated, their wives would
at once obtain a substantial portion of the estate of their

father; and if it subsequently transpired that the parties with whom they were acting in concert proved faithless to the agreement they were making among themselves, through no fault of Mrs. Lipps, we are unable to see how that fact would release them from the written obligation they had assumed.

We hold, therefore, that upon all three of the points urged by plaintiff, and above discussed, the district court erred in directing a verdict in favor of the defendants.

The judgment is therefore reversed and the cause remanded for further proceedings in harmony with this opinion.

REVERSED.

REESE, C. J., BARNES and ROSE, JJ., concur.

LETTON, SEDGWICK and HAMER, JJ., not sitting.